PHILLIP A. TALBERT
United States Attorney
ALEXIS KLEIN
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CASE NO. 2:23-CR-00299 TLN |
|---|---|
| Plaintiff, | **UNITED STATES' NOTICE OF MOTION AND MOTION TO STAY AND REVOKE RELEASE ORDER** |
| v. | |
| KHURSHEED HAIDER, | |
| Defendant. | |

The United States of America, by and through Assistant United States Attorney Alexis Klein, moves pursuant to 18 U.S.C. § 3145(a) to stay and revoke the Magistrate Judge's November 30, 2023, ruling authorizing the pretrial release of defendant Khursheed Haider. The release order is presently stayed until December 4, 2023, at 2 p.m. This motion is based upon the attached Memorandum of Points and Authorities, incorporated herein by reference, and any evidence and argument that may be presented at a hearing on this matter.

Dated: December 1, 2023

PHILLIP A. TALBERT
United States Attorney

By: /s/ ALEXIS KLEIN
ALEXIS KLEIN
Assistant United States Attorney

PHILLIP A. TALBERT
United States Attorney
ALEXIS KLEIN
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>KHURSHEED HAIDER,<br><br>Defendant. | CASE NO. 2:23-CR-00299 TLN<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO STAY AND REVOKE ORDER RELEASING DEFENDANT** |

The United States respectfully moves pursuant to 18 U.S.C. § 3145(a) to revoke the Magistrate Judge's November 30, 2023, order releasing defendant Khursheed Haider. The government maintains that the presumption of detention under 18 U.S.C. § 3142(e)(3)(E) has not been rebutted. Indeed, the conditions of release do not meet the mandate of the Bail Reform Act because they do not sufficiently mitigate the grave danger the defendant poses to the community nor reasonably assure his appearance.

        **I.**        <u>**FACTUAL BACKGROUND**</u>

This case originated when the Honolulu Division of the FBI shared information about an investigation involving suspects trading files of child sexual abuse material (CSAM) with others using Wire,[1] among other means of communication. The defendant was identified after another person was

---

[1] Wire is an application that allows users to send text messages, make voice and video calls, and share files. It offers end-to-end encryption, can be accessed from smartphones and computers, and a user can log in using an email address or phone number and password.

1

1   arrested in the FBI's investigation (referred to as "HN"), and the FBI searched their Wire application,
2   then assumed HN's identity on Wire. Defendant used the moniker "kingg" on Wire, where he posted,
3   distributed, and/or requested CSAM that included pre-pubescent boys and girls, bestiality, and BDSM
4   (bondage, domination, sadism, and masochism). Agents later obtained a search warrant for the
5   defendant's home, cars, and person, where additional CSAM evidence was found.

6   **I.     Defendant seeks out, possesses, and distributes child pornography involving crying
7           infants, bestiality, and BDSM. Defendant also discussed molesting children on the Wire
            Application and has access to children.**
8

9       On Wire, the defendant posted videos in chat rooms depicting very young boys and girls being
10  sexually assaulted. Defendant also provided details about how he would like to see infants, toddlers,
11  and prepubescent minors raped and sexually abused. For example, in a chat with HN, defendant sent a
12  video of a female infant crying while she is raped and ejaculated on by an adult male. Dr. Haider then
13  wrote "Yummm … ." Defendant was told by HN that this video was "too young" for him. Defendant
14  also chatted about bestiality materials; during one of these chats, he sent a video of bestiality with a pre-
15  pubescent girl and an adult male. Defendant separately requested CSAM involving cute "dickies,"
16  clarifying to HN that he meant "Lil boys."

17      In another chat, defendant described what he would do HN's daughter: "I fck her assss."
18  Defendant further discussed the three "all kiss[ing] each other," and described HN's daughter using a
19  sex toy on HN's penis and performing oral sex on him. Dr. Haider described this as "so funnnn".

20      A limited preview of the devices seized pursuant to the search warrant executed on November
21  20, 2023, revealed more than 600 images/videos (as calculated under the sentencing guidelines) of child
22  pornography on one of defendant's laptops, and at least 11 videos on defendant's iPhone that were
23  viewed as recently as November 10, 2023. The same video defendant distributed on October 30 in a
24  chat room on Wire, depicting a prepubescent boy being sexually abused by an adult male, was found in
25  the defendant's "Recents" folder on his iPhone.

26      As detailed below, the context of defendant's sexual interest in children, and disturbing
27  conversations about what type of sexual abuse he would like inflicted on children, is particularly
28  important because defendant has access to two children appearing to be the same age and sex as some of

the videos from Wire linked to the defendant: one age 3 (girl), and one age 5 (boy).  Defendant also has access to two teenage girls, a circumstance not completely remedied by the current release order.  The government is further concerned about his access to minors through his work, either via telehealth or at hospitals where he has privileges.

### II. Defendant has traveled extensively and has significant ties out of the country, yet was not forthcoming with pretrial about his travel history.

Since 2014, defendant has traveled outside the country at least 14 times, including a 14-day solo trip to Pakistan and Dubai less than two weeks ago.  Defendant seemed to minimize his travel to pretrial.  It is significant that defendant has taken many trips abroad where he is flying into one destination, like Istanbul, and out of another, like Dubai.  In 2023 alone, he made two roundtrips to Dubai; since 2019, he's made five trips out of the country.  Defendant's access to significant resources, family ties abroad, and his frequent, sometimes lengthy travel abroad presents a risk of nonappearance.

## II.    PROCEDURAL HISTORY

On November 21, 2023, a complaint was filed charging the defendant with a single count: possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4).  ECF 1.  Defendant made his initial appearance that same day, was temporarily detained, and the matter was continued for status of counsel and possible detention hearing because defendant did not qualify for the Federal Defender's services.  ECF 4.  On November 22, defendant appeared with new counsel, and the matter was continued at the defense's request to November 30, 2023, for a further detention hearing.  ECF 8.

On November 30, a grand jury returned a two-count indictment, charging defendant with distribution of child pornography, in violation of 18 U.S.C. § 2252(a)(2), on or about October 30, 2023, and possession of child pornography involving prepubescent minors and minors under the age of 12, in violation of 18 U.S.C. § 2252(a)(4)(B), on or about November 20, 2023.  ECF 11.  That same day, defendant was arraigned, and a detention hearing was held.  ECF 13.  The Magistrate Judge ordered defendant released on conditions on December 4 at 9 a.m., then stayed its order upon motion of the government to December 4, 2023, at 2:00 p.m.  *Id.*

/ / /

/ / /

3

### III.     STANDARD

Under the Bail Reform Act, if a person is ordered released by a magistrate judge, then "the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release." 18 U.S.C. § 3145(a)(1); *United States v. Gebro*, 948 F.2d 1118 (9th Cir. 1991); *United States v. Evans*, 62 F.3d 1233, 1237 (9th Cir. 1995) ("Rule 40 and section 3145 . . . place[d] the review of the magistrate judge's order in the province of the district court where the prosecution is pending, and where the bail status of the defendant ultimately will be determined during the course of that trial.").

When considering whether to revoke a release order, the reviewing district court conducts a *de novo* review of a Magistrate Judge's bail ruling. *United States v. Koenig*, 912 F.2d 1190, 1191 (9th Cir. 1990). It "review[s] the evidence before the magistrate and make[s] its own independent determination whether the magistrate's findings are correct, with no deference." *Id*. at 1193. If the performance of the district court's function "makes it necessary or desirable for the district judge to hold additional evidentiary hearings, it may do so, and its power to do so is not limited to occasions when evidence is offered that was not presented to the magistrate." *Id.*

In the types of cases described in 18 U.S.C. § 3142(e)(3), a rebuttable presumption exists that no condition or combination of conditions will reasonably assure the defendant's appearance and the safety of the community. If the Court finds that the defendant has proffered evidence to rebut the presumption of dangerousness and flight, the Court then considers four factors in determining whether release is appropriate: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including the person's character, physical and mental condition, family and community ties, employment, financial resources, past criminal conduct, and history relating to drug or alcohol abuse; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g). "The presumption is not erased when a defendant proffers evidence to rebut it; rather the presumption remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in § 3142(g)." *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008).

### IV. ARGUMENT

The government maintains that the conditions outlined in the pretrial service's memorandum do not sufficiently mitigate the grave danger defendant poses to the community given his position as a physician, access to children, and access to resources to further his crimes. Defendant additionally poses a flight risk due to his access to substantial financial resources, meaningful family-based international ties, and frequent international travel.

Because defendant is charged with an offense enumerated in 18 U.S.C. § 3142(e)(3)(E), a rebuttable presumption arises that there is no condition or combination of conditions that will reasonably assure defendant's appearance and the safety of the community. In this case, the presumption in favor of detention is supported by clear and convincing evidence of the danger the defendant poses to the community and by a preponderance of evidence of the risk the defendant will flee.

Each of the § 3142(g) factors weigh in favor of detention. The nature and circumstances of the offense are serious, and the weight of the evidence is strong. Defendant has described in graphic detail ways he would like to sexually abuse children, and how he would like to see these infants and toddlers being raped, bound, and otherwise sexually abused by adults, other children, and animals. Evidence was found on his devices of his crimes, in addition to other evidence collected from the Wire application via HN's account and an IP grabber used by FBI to link kingg to the defendant using Wire at his home in Roseville.

The history and characteristics of the defendant support detention. The declaration of the Chief of Enforcement for the Medical Board of California, Jenna Jones, provides further context and evidence of the danger defendant presents. *See* ECF 10, Exhibit A. In particular, Dr. Haider poses a significant danger because of the special access he has to resources and tools to further his sexual interest in children, including access to patient records, a seemingly unlimited ability to write and fill prescriptions, and access to narcotics and other drugs in a hospital setting. *Id.* Given this unique aggravating factor, the terms and conditions of release are insufficient to mitigate the risk that the defendant's ability to use these tools to satisfy his disturbing interest in prepubescent children.

Lastly, defendant's ties abroad, significant travel history, and apparent lack of candor with pretrial regarding the nature and extent of his travels demonstrate he is a flight risk. According to the

5

supplemental Pretrial Services Report, the defendant's family lives entirely overseas. In particular, defendant's parents reside in Pakistan. He also has one sister in Pakistan and two other siblings residing in the United Kingdom. Moreover, the defendant's extended family as well as his wife's extended family, reside primarily in Pakistan. The defendant is in frequent telephonic contact with most of his family and returned from visiting them within the last two weeks. Given these facts, it is difficult to envision a release package that can adequately address the significant flight concerns present in this case, especially considering the defendant faces a 5-year mandatory minimum on of the indicted counts.

The government respectfully submits the proposed third-party custodian in this case, his wife, is not appropriate. The defendant committed his crimes in their shared household, over a shared wifi network, with access to their four children. Despite his wife's access to the defendant's passcode to his iPhone, FBI still recovered the horrific material detailed. The court can reasonably infer that the presence of the defendant's wife in the home had zero deterrent effect on the defendant's behavior. The release terms currently in place put the defendant's wife in the untenable position of policing and reporting any violations committed by husband. This is exacerbated by the reality that the defendant is the family's sole source of income. There is thus a heavy incentive for the wife to suppress reporting violations committed by the defendant for fear of having him remanded into custody and losing her source of financial support for the family. In short, the defendant's wife is a wholly-inappropriate custodian to supervise a defendant with the number of red flags presented in this case, especially given that she was present throughout the charged time period of the defendant's criminal conduct.

[CONTINUED ON NEXT PAGE]

**V.      CONCLUSION**

In sum, the release conditions do not mitigate Dr. Haider's flight risk and demonstrated danger to the community. The requirements of 18 U.S.C. §§ 3142(e)(3)(E) and 3142(g) have not been satisfied here, and accordingly, the Government requests that the Court revoke the release order after a hearing on the motion.

Dated: December 1, 2023

Respectfully submitted,

PHILLIP A. TALBERT
United States Attorney

By: /s/ ALEXIS KLEIN
ALEXIS KLEIN
Assistant United States Attorney