PHILLIP A. TALBERT
United States Attorney
ALEXIS KLEIN
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>KHURSHEED HAIDER,<br><br>Defendant. | CASE NO. 2:23-CR-00299 TLN<br><br>**UNITED STATES' REPLY IN SUPPORT OF MOTION TO STAY AND REVOKE ORDER RELEASING DEFENDANT** |

    The government continues to respectfully urge this Court to revoke the release order issued on November 20. The information provided to the Court in the declaration and defense motion regarding CPS' position is false. The defendant has also provided information to pretrial that is inconsistent with now verified facts about internet access at his place of employment, among other things. Moreover, the government believes the defendant may have additional resources, specifically cryptocurrency, that were not disclosed to pretrial. The government has located additional horrific and disturbing evidence on defendant's digital devices, which include the heinous torture of an infant and possible production of infant child pornography. For all these reasons, the government maintains the conditions of release do not meet the mandate of the Bail Reform Act because they do not sufficiently mitigate the grave danger the defendant poses to the community nor reasonably assure his appearance.

///

///

**I.     Defendant lied to pretrial services about internet access at work, has been less than forthcoming about the nature and extent of his travel, among other things, and likely his access to additional financial resources, demonstrating defendant is both a danger to the community and a flight risk.**

It is concerning that defendant as provided false information and half-truths to pretrial. This conduct demonstrates the danger defendant presents, as well as his risk of non-appearance. Defendant specifically represented to pretrial that his employer "does not have internet service and the doctors only have access to the intranet hospital system." Law enforcement spoke directly to a representative of the hospital, who shared that physicians at the hospital absolutely have internet access, just like all other hospital employees. While there have been representations from the defense regarding the age of patients Dr. Haider would treat should he be released from custody, the hospital further confirmed patients 16 and older are treated in the ICU. The defendant has not provided any verification, to date, about his practice there being restricted to patients over the age of 18. Moreover, law enforcement has learned defendant has hospital privileges at three hospitals in Texas, via the Texas Medical Board. Defendant is apparently also licensed in Texas, yet another important piece of information defendant failed to disclose to pretrial.

Separately, law enforcement continues to work on forensic reviews of defendant's digital devices. Shortly before this filing, the government received information that law enforcement discovered a note in defendant's phone regarding a cryptocurrency recovery password. Defendant did not disclose any cryptocurrency to pretrial, and the government has serious concerns the defendant did not disclose both the nature and extent of his financial resources. This behavior is consistent with other things defendant did in this case to obscure his criminal activity, like using encrypted applications and switching to different applications to avoid the discovery of his perverse interest in the sexual abuse of infants, toddlers, and prepubescent boys and girls.

The defendant also misled pretrial about the nature and extent of his international travels. Since 2014, he has apparently flown to London twice from the United States. He has also traveled to Canada from Virginia. Defense counsel characterizes this international travel as trips to Pakistan, but defendant told pretrial he had only made "five or so" trips there since 2009. This is wholly inconsistent with his extensive international travel history, which includes at least 14 trips abroad since 2014.

**II.     The proposed third-party custodian is wholly inappropriate given the untrue information she has provided to pretrial and this Court**

While the government is restricted from disclosing in a court filing the extent of the information it has obtained from Placer County CPS and/or County Counsel under Welfare and Institutions Code section 827, it can represent to the Court that the information provided to pretrial and in the declaration attached to the defense filing is false.  The government understands counsel for the defendant has been served with paperwork that supports the government's representation.

The government is in the process of obtaining documents to present to the Court under Welfare and Institutions Code (WIC) section 827.  However, the Court may independently obtain this information, and may even receive a verbal proffer of the information from CPS and/or Placer County Counsel under WIC § 827(a)(1)(E).[1]

It is incredibly concerning that the proposed third-party custodian in this case has presented information to this Court that is untrue.  It demonstrates that this Court cannot trust that this person, the defendant's wife, would also report violations of defendant's pretrial release without hesitation, or otherwise be forthcoming with pretrial and this Court.

**III.    Defendant's devices contain additional child pornography that includes unspeakable torture of babies, BDSM rape of prepubescent girls, and possible production of child pornography involving an infant.**

Law enforcement uncovered additional, unbelievably horrific child pornography in defendant's "Recent Items" – meaning, items he had viewed on his devices before his arrest.  One video shows the heinous torture of an infant for more than 9 minutes and 30 seconds.  In the video, a nude baby girl is bound to a rod, hung upside down, and duct taped at one point, while she is severely beaten, tortured, and burned.  She is sexually assaulted, too.  This baby girl is seen crying and screaming from this torture throughout the video.

---

[1] The government will provide chambers the contact information for the Court to receive this information from CPS and/or Placer County Counsel, so that the Court may have access to this information more expeditiously than through the 827 petition the government is pursuing.  Again, the government understands that the defense presently in possession of this information, and in fact, has more information than the government currently does regarding CPS' position about whether defendant will be authorized to have visitation with his children.

In the same recents folder, there is a video of a man raping a prepubescent girl who is bound with a rope. The man is wearing a hockey-style mask as he rapes her, while the girl is shaking her head no.

Law enforcement also located a video that may be production of child pornography involving a female infant. Law enforcement cannot yet tell if this is something the defendant created, but it may be. The video is very close up, and consistent with a man holding a device to capture the video, while he rubs his penis on a baby's vagina, then ejaculates on the baby.

These are just a small sampling of the disturbing child pornography the defendant seeks out, discusses, views, keeps, and may make. As detailed extensively in our prior briefs, the government is extremely concerned by the defendant's access to young children in the age range of the child pornography depicting BDSM, bestiality, and torture the defendant enjoys. The proposed conditions do not sufficiently mitigate the grave danger he poses.

### IV.    Conclusion

As the investigation in this case is ongoing, the government has continued to uncover additional evidence demonstrating defendant's danger to the community and risk of non-appearance. The government respectfully requests the Court hold a hearing if it is inclined to deny the government's motion, so that the government may present additional information to the Court in support of its motion.

Notwithstanding, there is presently ample evidence to grant the government's motion, because the release conditions do not mitigate Dr. Haider's flight risk and demonstrated danger to the community. The requirements of 18 U.S.C. §§ 3142(e)(3)(E) and 3142(g) have not been satisfied here because the defense cannot overcome the presumption of detention. Accordingly, the government requests that the Court revoke the release order.

Dated: December 7, 2023

Respectfully submitted,

PHILLIP A. TALBERT
United States Attorney

By:   /s/ ALEXIS KLEIN
ALEXIS KLEIN
Assistant United States Attorney